IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AUMANN AUCTIONS, INC., ) | |
| ) | 8:07CV431 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| JOAN K. PHILLIPS, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant's motion for summary judgment, Filing No. 39, pursuant to Fed. R. Civ. P. 56. Plaintiff is an auction company located in Illinois. Defendant is a resident of Nebraska. Plaintiff filed this lawsuit alleging defendant breached two contracts, one for the auction of antique tractors and one for the auction of antique toys. Defendant contends she is entitled to summary judgment. After a complete review of the record, the court has determined that the motion should be denied.

*Standard of Review*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Fed. R. Civ. P. 56. "The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact." Espinosa v. Potter, 2008 WL 4216348 *3 (N.D. Ill. 2008). "In deciding a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. Kizer v. Children's Learning Ctr., 962 F.2d 608, 611 (7th Cir.1992). In order to survive a motion for summary judgment, the nonmoving party

must present definite, competent evidence to rebut the summary judgment motion. *See Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir.2004)." *Id*. Both agreements provide, and the parties appear to agree, that Illinois law will govern in this case.

### *Background*

The court will view the facts in the light most favorable to the nonmoving party. Plaintiff, Aumann Auctions, is an auction company located in Illinois and alleges that it entered into two contracts with defendant to permit the sale of expensive antique toys and tractors at an auction to be conducted in June 2008, and thereafter. Gary and Joan Phillips, husband and wife, were the owners of a collection of antique tractors and antique toys in Bridgeport, Nebraska. On or about July 2007, Kurt Aumann received a call from Bill Seaworth on behalf of the Phillipses about the auction. Mr. Aumann traveled to Nebraska and reviewed the inventory. Thereafter, Gary Phillips died on Labor Day.

Plaintiff contends that it had two contracts with the defendant on September 11, 2007. Filing No. 1, Exs. A and B. The first contract involved an alleged agreement that plaintiff would provide auction services to the defendant. The parties signed a document entitled "Antique Tractor Auction Contract" which identified property entitled "Antique Tractor Collection as Inventoried." This contract also identified the dates of the auction as June 4, 5, 6, and 7, and indicated that the auction would occur in Bridgeport, Nebraska. The second alleged contract entitled "Auction Contract" involved an auction for an "Antique Toy Collection." This contract stated the location of the auction, auction date, and time as "Approved by Seller." Defendant contends that the antique tractor collection and the antique toy collection were never inventoried prior to the time defendant informed plaintiff

that the auction services would not be needed. Defendant contends that there was no agreement as to time, date, location, or what items would be auctioned.

Before the deal fell apart and following a request from Mrs. Phillips and Mr. Seaworth, Mr. Aumann returned to Nebraska on September 9, 2007, to finalize the auction plans and negotiate the contract. They viewed all twelve sites that contained the tractors. According to plaintiff, the tractors were counted and pictures taken for the videos and marketing. Mr. Aumann's notes indicate that there were 2,470 tractors in the inventory. Plaintiff contends that on the night of September 10, 2007, Mr. Aumann had a conversation with defendant, Mr. Seaworth, and defendant's other brother, Ralph Kosmicke, and they discussed the need to sell the tractors as quickly as possible. According to plaintiff, they also talked about which tractors would sell on which days and which ones would be sold on the Internet. Also, plaintiff states that they all talked about the antique toy collection and which ones would be shipped to the Illinois office for sale. Defendant was going to line up a truck to send the antique toys to Illinois when plaintiff's employees came back to catalog the antique tractors.

Mr. Aumann indicated he would mail a contract to the defendant. However, Mr. Phillips wanted it that day. Therefore, the parties went to Gary's Implement store, a business owned and run by the Phillipses, and arranged for a contract to be printed off and signed. On September 11, 2007, the parties allegedly went over the contract line by line. The parties signed the contract, shook hands, took a picture, and Mr. Aumann returned to Illinois. Plaintiff began creating advertisements and sent photos to the Phillipses to use in the advertisements. Aumann sent an advertisement to *Antique Power* magazine on October 1, 2007, for the sale of 2,500 tractors. Plaintiff contends it has already spent

3

considerable sums advertising and preparing for the auction. Aumann and its employees had planned a trip to come to Nebraska to further catalog the items for auction. On October 9, 2007, defendant asked plaintiff not to come to Nebraska, as she and Mr. Seaworth were cataloguing the items themselves. Plane tickets had already been purchased. Defendant then notified Mr. Aumann on October 19, 2007, that she had sold all of the antique tractors. She sent a letter to plaintiff on November 9, 2007, which stated that she "must terminate the auction contracts you prepared for the auction of the antique tractors and toys." Filing No. 23, Ex. C. The auction was handled by Kruse International Company, and one of the advertisements referred to the sale as the largest antique auction in the world with regard to agriculture equipment and referred to 2,500 antique tractors. Plaintiff also alleges it would have received substantial commissions off the sale of the toys and tractors.

### *Defendant's Arguments*

Defendant contends that the parties never completed an inventory of the antique tractors and toys. Defendant argues that such a list did not exist at the time the document was signed nor at a time when plaintiff could argue that an alleged anticipatory breach occurred. Plaintiff agrees that no inventory was ever completed. Defendant argues that the *Cheever* case applies. *Academy Chicago Publishers v. Cheever*, 578 N.E.2d 981 (Ill. 1991). In *Cheever* the court dealt with a contract that would allow plaintiff to publish defendant's works of uncollected stories. The publisher then began to collect unpublished works and provided them to the defendant. Defendant received over sixty unpublished stories, and then objected to the publication of the book. Plaintiff tried to return the money that had been advanced to her. *Id.* at 983. Both the trial court and the appellate court

found the contract to be enforceable.  However, the Illinois Supreme Court reversed and found that there was no valid and enforceable contract.  *Id*. at 983-84.  The court concluded that the agreement lacked definite and certain terms that were essential to a valid, enforceable contract.  *Id*.  The court also stated that the parties disputed major terms such as the length, and content of the proposed book as well as the number of stories, number of pages, and who had control over which stories were used.  *Id*. at 984.  The court noted that some terms can be missing, but the essential terms must be present.  *Id*.

Defendant argues that this case is like *Cheever*, because there is a controversy as to what tractors were to be included in the auction.  No inventory of the tractors ever occurred, so there is no written contract as to the minimum or maximum number of tractors or farm equipment that would be included in the auction, nor is there anything referring to the value of the items.  Like *Cheever*, argues the defendant, there was no meeting of the minds in this regard.  Defendant said no decision had been made as to what items would be included in the June 2008 auction.  Defendant also argues that no contract exists when a material term is not already agreed upon, until such time as the parties agree on that term.  *See [Intaglio Service Corp. v. J.L Williams & Co., Inc., 420 N.E.2d 634, 636-38 (Ill. App. 1981)](#)*.  She argues that these missing terms are material.

Defendant next argues that the "Auction Contract" which refers to the "Antique Toy Collection" suffers from the same problem.  No inventory was ever performed.  According to the defendant, this contract also does not set forth a date, time, or location, and all such terms must be "approved by the Seller."  As none of these items were ever agreed upon, defendant contends this contract is likewise unenforceable.

In addition, defendant contends that all agreements for auctions in Illinois must include:

> § 15-10. Auction contract. Any auctioneer, associate auctioneer, or auction firm shall not conduct an auction or provide an auction service, unless the auctioneer, associate auctioneer, or auction firm enters into a written or oral auction contract with the seller of any property at auction prior to the date of the auction. The agreement shall be signed by the auctioneer, associate auctioneer, or auction firm conducting an auction or providing an auction service and the seller or sellers, or the legal agent of the seller or sellers of the property to be offered at or by auction, and shall include, but not be limited to the following disclosures:
>
> (1) Licensees shall disclose:
>
> (A) the name, license number, business address, and phone number of the auctioneer, associate auctioneer, or auction firm conducting an auction or providing an auction service;
>
> (B) the fee to be paid to the auctioneer, associate auctioneer, or auction firm for conducting an auction or providing an auction service; and
>
> (C) an estimate of the advertising costs that shall be paid by the seller or sellers of property at auction and a disclosure that, if the actual advertising costs exceeds 120% of the estimated advertising cost, the auctioneer, associate auctioneer, or auction firm shall pay the advertising costs that exceed 120% of the estimated advertising costs or shall have the seller or sellers agree in writing to pay for the actual advertising costs in excess of 120% of the estimated advertising costs.
>
> (2) Sellers shall disclose:
>
> (A) the name, address, and phone number of the seller or sellers or the legal agent of the seller or sellers of property to be sold at auction; and
>
> (B) any mortgage, lien, or encumbrance of which the seller has knowledge on any property or goods to be sold or leased at or by auction.

225 Ill. Comp. Stat. § 407/15-10.  Defendant contends that the parties agreed to a budget of $50,000-$70,000, but defendant argues that the 130% disclosure information was never included.  Defendant contends that when a document does not comply with the statutory

requirements, it is unenforceable. See *Smith v. Intergovernmental Solid Waste Disposal Ass'n*, 605 N.E.2d 654, 665 (Ill. App. 1992). Further, defendant contends that a principal may revoke her agent's authority any time before the auction. 7A C.J.S. *Auctions and Auctioneers* § 15. Joan Phillips asked Bill Seaworth, close friend and advisor regarding the auction, to call Kurt Aumann to cancel the auction. On November 9, 2007, she sent a letter to Kurt Aumann confirming cancellation of the auction services. Filing No. 41, Attach. 1, Ex. 3.

### *Plaintiff's Arguments*[1]

Plaintiff contends that there are no missing essential terms to this contract, and an inventory had been completed prior to the entry of the contracts. Plaintiff further argues that this case is unlike *Cheevers*, because there were numerous terms missing in that case. See *Dawson v. General Motors Corp.*, 977 F.2d 369, 373 (7th Cir. 1992) (distinguishing *Cheevers* as being a matter of sheer guesswork); *Rose v. Mavrakis*, 799 N.E.2d 469, 474, 278 (Ill. App. 2003) (*Cheevers* distinguished as it had too many terms missing). In the case before the court, plaintiff argues there are not numerous, essential missing terms. Plaintiff contends that these agreements gave it the exclusive right to market and sell; gave the location as Bridgeport, Nebraska, Illinois, and the Internet; gave the specific dates, plus dates as approved by the defendant; set forth the amount of commissions plaintiff would receive; and set forth basic responsibilities and general contract provisions.

---

[1] Plaintiff argues that all the arguments applicable to the antique tractor collection are equally applicable to the contract dealing with the antique toy collection.

With regard to defendant's argument that the phrase "as Inventoried" is ambiguous, plaintiff disagrees. Plaintiff argues the contracts are clear and unambiguous. However, if this court finds the contracts are ambiguous, the Illinois Supreme Court has set forth the requirements for reviewing the contract. First, the court must decide based on the language of the contract whether the contract is ambiguous. If it is not, the contract must be interpreted solely from the agreement. If the terms are ambiguous or capable of more than one interpretation, then parol evidence is admissible to determine intent of the parties. Interpretation in that regard is a question of fact which can't be decided on a motion to dismiss. *Quake Construction, Inc., v. American Airlines, Inc.*, 565 N.E.2d 990, 994 (1990).

Plaintiff argues that under *Quake* the language of the contract is not ambiguous. Plaintiff contends that the language "Antique Tractor Collection as Inventoried" is not ambiguous as it has already been performed. The reference, argues plaintiff, is to "antique tractor collection," and the contract does not require that each tractor be identified. The reference to identify in the contract refers to cataloging and photographing of each tractor for marketing purposes. Mr. Aumann was supposed to return to Omaha and catalog all the tractors in the inventory, take photos, and plan the auction. Plaintiff contends that defendant and Mr. Seaworth both knew that at the time of the contract the agreement was for the entire collection of antique tractors.

Second, plaintiff argues that if this court finds that "as Inventoried" is ambiguous, parol evidence is permitted to explain its meaning. Plaintiff took handwritten notes regarding all antique tractors, took photographs of many of the tractors, and visually inspected and counted the tractors. With the assistance of Mr. Seaworth, the parties came up with about 2,500 tractors. In addition, the catalogue issued by Kruse International sold

in total 2,575 antique tractors. This is strong evidence, argues plaintiff, that the parties agreed on the sale of all the antique tractors.

Finally, plaintiff argues that if there is an ambiguity, it is a question for the jury to decide. Plaintiff contends that just like a motion to dismiss in *Quake*, a genuine issue of material fact cannot be decided on by a motion for summary judgment. *Ferguson v. United States*, 484 F.3d 1068, 1072 (8th Cir. 2007). With regard to the disputed facts, plaintiff contends that the existence of an inventory is disputed. Plaintiff also argues that a substantial amount of discovery has not yet occurred due to unanswered interrogatories, documents that have not been produced, and depositions that still must be taken. Plaintiff at the time of this motion had apparently been unable to take the deposition of the defendant.[2]

Plaintiff also argues that a failure to comply with the Illinois Auction License Act would not render a contract unenforceable. Plaintiff notes first that its contract for commissions and expenses yields greater protections to the defendant than does the Illinois statute. Further, even if a violation of the act existed, the power to discipline rests with the Office of Banks and Real Estate. This act provides administrative sanctions against auctioneers who violate the act. Thus, argues plaintiff, any alleged violation would not render the contract unenforceable. *See, e.g., Anco Investment Corp v. Spencer*, 275 N.E.2d 263 (Ill. App. 1971) (failure to comply with Retail Installment Sales Act does not render contract unenforceable.); *Ford Motor Credit Co. v. Neiser*, 554 N.E.2d 322 (Ill. App.

---

[2]The court notes that the magistrate judge addressed the motion to compel and entered an order regarding discovery issues in this case, well after the filing of this motion for summary judgment. Filing No. 66.

1990) (violation of Motor Vehicle Retail Installment Sales Act did not include voiding the contract).

### *Court's Analysis*

The court first notes that the magistrate judge entered a final progression order on August 25, 2008, well after the filing of this motion for summary judgment. Filing No. 67. In that order, the parties have until January 30, 2009, to file motions for summary judgment. Additionally, the magistrate judge set a deposition deadline of March 31, 2009. *Id*. Expert witnesses are to be designated no later than November 1, 2008. *Id*. The parties are clearly in the discovery phase of this case. Filing No. 68.

Based on the foregoing facts as set forth herein, the court finds there are issues of material fact in dispute at this point in the lawsuit. The court agrees with the plaintiff that at the very least there is a dispute with regard to the existence of an inventory. The court will not decide at this time if it believes the contracts are ambiguous with respect to what constitutes inventory. The court will wait until such time as additional evidence is presented and discovery concluded before finally determining that issue. However, the court advises the parties that based on the evidence presented to date, it is inclined to allow this case to proceed to trial. The court notes that even the *Cheever* case, relied on by the defendant, went to trial before these factual findings were made. Further, in *Dawson*, the court stated:

> The Illinois courts have not been shy about enforcing promises made in the context of ongoing negotiations and often involving preliminary or "incomplete" agreements. See, e.g., Quake Construction, 152 Ill. Dec. at 308, 565 N.E.2d at 990; Borg-Warner Corp. v. Anchor Coupling Co., 16 Ill.2d 234, 156 N.E.2d 513 (1958).

*Dawson*, 977 F.2d at 374. Accordingly, the court finds the defendant's motion for summary judgment will be denied on the basis that (1) substantial discovery remains in this case, and (2) there are material facts in dispute in this lawsuit.

THEREFORE, IT IS ORDERED that defendant's motion for summary judgment, Filing No. 39, is denied.

DATED this 7th day of October, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge